## Matthews v. Johns-Manville Corp.

*Gene Locks,* for plaintiff.
*Dudley Hughes,* for UNARCO.
*Francis Marshall,* for Johns-Manville.

TAKIFF, *J.,* September 24, 1982—Over 2,100 asbestos-related personal injury actions are presently pending in the Court of Common Pleas for Philadelphia County. Unarco Industries, Inc., sometimes identified as U.N.R. Industries, Inc. (UNARCO) and Johns-Manville Corporation (Johns-Manville) are co-defendants along with numerous other manufacturers, producers and sellers of asbestos and asbestos-containing products, in virtually all of these actions. On July 29, 1982, UNARCO and its affiliated companies filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §101 et seq., in the United States Bankruptcy Court for the Northern District of Illinois. On August 26, 1982, Johns-Manville similarly filed a Chapter 11 petition in the Southern District of New York. Pursuant to 11 U.S.C. §362(a), all actions, proceedings and claims against both UNARCO and Johns-Manville have automatically been stayed pending further action by the bankruptcy courts. Whether and to what extent the automatic stay provision affects actions, proceedings and claims brought against co-defendants of the bankrupt petitioners is the subject of the instant petitions.

Plaintiffs do not dispute that their claims, and all cross-claims by and against the non-bankrupt co-defendants directly involving UNARCO and Johns-Manville have been stayed pursuant to the automatic stay provision of §362(a). Plaintiffs contend, however, that "[w]here one of several defendants

has filed a petition for an arrangement under Chapter 11 of the Bankruptcy Act, and a stay of proceedings against that defendant has been ordered by the bankruptcy court, the stay order does not preclude the prosecution of the action against the other defendants, and the action against the bankrupt defendant should be severed from the main action." Plaintiffs' memorandum of law in support of their petition for severance of UNARCO at 2; plaintiffs' memorandum of law in support of their petition for severance of Johns-Manville at 2. Accordingly, plaintiffs have petitioned this court to sever all claims and cross-claims brought against UNARCO and Johns-Manville in the instant matter, thereby allowing their claims against other co-defendants to proceed unabated. In opposing the instant petitions,[1] defendants contend that §362(a) not only stays proceedings as to the bankrupt petitioners but as to all co-defendants in any action in which UNARCO or Johns-Manville are named as party defendants. Hence, it is asserted that this court is pro-

---

1. Defendants H. K. Porter Company, Inc., Southern Asbestos Company and Forty-Eight Insulations, Inc. submitted an answer and memorandum of law in opposition to plaintiffs' petition for severance of UNARCO Industries, Inc., and an answer and memorandum of law on behalf of themselves and defendants, Amatex Corporation, Armstrong World Industries, Inc., Celotex Corporation, Eagle-Picher Industries, Fibreboard Corporation, GAF Corporation, Keene Corporation, Nicolet Industries, Inc. and Pacor, Inc. in opposition to plaintiffs' petition for severance of Johns-Manville Corporation. Lac d'Amiante du Quebec, Ltee., formerly known as Lake Asbestos of Quebec, Ltd., and Owens-Illinois, Inc., also submitted amicus curiae briefs in opposition to plaintiffs' petitions for severance of UNARCO and Johns-Manville. Memoranda in opposition to plaintiffs' petitions were also submitted by Pittsburgh Corning Corp. and by Celotex Corp. on behalf of itself and other defendants.

hibited from granting the within requested relief.

Section 362(a) provides:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the case under this title;

(2) the enforcement, *against the debtor* or *against property of the estate,* of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of *property of the estate* or of *property from the estate;*

(4) any act to create, perfect, or enforce any lien *against property of the estate;*

(5) any act to create, perfect, or enforce *against property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim *against the debtor* that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim *against the debtor;* and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." (Emphasis added.)

The plain language of the above section, its legislative history and the relevant caselaw charting its

contours and scope point to the inescapable conclusion that the §362(a) automatic stay is designed solely as a mechanism for the protection of the debtor-bankrupt and the property of the bankruptcy estate; not for the benefit of related but independent co-defendants. Congress did not intend, and the express language of the statute does not provide a windfall benefit to non-bankrupt co-defendants.

The plain language of the statute belies defendants' expansive reading of the scope of this provision and compels our conclusion that the protections of §362(a) are only afforded to the debtor-bankrupt. It is the insolvent debtor, not non-bankrupt third parties, that benefit from the stay provision of this section. The avowed purpose of this provision is to give the debtor an opportunity to take stock and formulate plans for repayment and reorganization with protection from "a chaotic and uncontrolled scramble for [its] assets in a variety of uncoordinated proceedings in different courts." In Re Frigitemp Corp., 8 B.R. 284 (D.C., N.Y. 1981). Consistent with this purpose, the statute provides a mechanism for relief for actions brought "against the debtor;" nowhere does it expressly or implicitly purport to encompass other related interparty claims.[2] See In Re Related Asbestos Cases, no. C-79-3588 (N.D., Calif., September 14, 1982).

---

2. Defendants assert that the plain language of the statute, particularly the reference to its applicability to "all entities," effectuates an automatic moratorium on all actions in which UNARCO and Johns-Manville are party defendants. See, e.g., Clutter v. Johns-Manville, et al., no. C-78-229 (N.D., Ohio, August 2, 1982). We find this argument unpersuasive. The phrase "all entities" simply identifies those parties who, when moving against the bankruptcy debtors, are covered by the provision. All entities in the instant matter are stayed, but only insofar as they act against UNARCO and Johns-Manville.

The legislative history underlying the passage of §362 indicates that congress intended the stay provision as one of the fundamental protections for bankrupt debtors:

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." S. Rep. no. 95-989, 95th Cong., 2d Sess. 54-55 (1978). The stay also serves to protect creditors:

"The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that." H.R. Rep. no. 95-595, 95th Cong., 2d Sess. 340 (1978). The congressional intent in enacting §362, as expressed in the above quoted passages, is clear — §362 is designed to protect the debtor and its property for the benefit of the debtor and its creditors, only. The bankrupt alone is the primary beneficiary of any stay. Nowhere in the legislative history is there any indication that congress intended to bestow a windfall benefit on solvent co-defendants as a result of a bankrupt-debtor's financial misfortunes or impose so restrictive a limitation on the exercise of legally sanctioned rights of parties against others who are not within the ambit of the bankruptcy proceeding. Accordingly, we are of the opin-

ion that §362(a)(1) does not operate as an automatic moratorium on all actions in which the bankrupts are parties; nor does it preclude the severance of the bankrupt-debtors from the main action. Therefore, the mere fact that two of the parties in the instant action have filed a Chapter 11 bankruptcy petition is not sufficient to stay the proceedings as to non-bankrupt parties in a proceeding where the claims asserted are joint and several. The vast majority of reasoned authority have reached similar conclusions.

In Royal Truck and Trailer v. Armadora Maritima Salvadoreana, 10 B.R. 488 (N.D., III, 1981), for example, plaintiff Royal Truck sued defendants Armadora Maritima Salvadorena, S.A. and Uiterwyk. Just prior to trial, Armadora filed for bankruptcy under Chapter 11, and the action as to Armadora was stayed pursuant to §362(a). Uiterwyk asserted that the stay applied to the action against him as well. The trial court rejected this contention and granted a motion to proceed against the non-filing co-defendant, holding:

"Nothing, however in the Bankruptcy Code would support Uiterwyk's contention. In fact, the language of the Code makes it quite clear that, in Chapter 11, the protections afforded the bankrupt are designed for the debtor-bankrupt only . . . .

Under the former Bankruptcy Act, it was well-settled that bankruptcy proceedings under Chapter 11 did not require termination of every suit to which the bankrupt was a party. See Connell v. Walker, 291 U.S. 5, S.Ct. 257, 258, 78 L.Ed. 613 (1934); Donald F. Duncan, Inc. v. Royal Tops Manufacturing Company, 321 F.2d 879, 882 (7th Cir. 1967).

There seems to be no compelling reason for a different result to obtain under Chapter 11 of the new Bankruptcy Code and neither party has provided us

with any reason for modifying this principle under the New Code . . . .

Consequently, in this court's opinion, *something more than the mere fact that one of the parties to this lawsuit has filed a Chapter 11 bankruptcy petition must be shown in order that proceedings be stayed against non-bankrupt parties.* See e.g., Teledyne Industries v. Eon Corp., 401 F.Supp. at 734, 10 B.R. at 490-491 (Emphasis added). See also In Re Dino Smith, 14 B.R. 956 (Bankr. D.C., Conn. 1981); In Re Aboussie Brothers Construction Co., 3 C.B.C. 2d 684 (E.D., Mo. 1981); In Re The Van Shop, 8 B.R. 72 (Bankr. N.D., Ohio 1980); In Re Larmar Estates, Inc., 5 B.R. 328 (Bankr. E.D., N.Y. 1980); In Re Cloud Nine 3 B.R. 202 (Bankr. D.N., Mex. 1980).

Defendants nonetheless contend that all parties to an action, along with the bankrupt-debtor, enjoy the benefits of the automatic stay. Defendants rely primarily on In Re White Motor Credit Corp., 11 B.R. 294 (Bankr. N.D., Ohio 1981) which involved a Chapter 11 proceeding filed by White Motor, a company which was named as a defendant along with component manufacturers and retail sellers, in approximately 160 products liability suits. In construing the effects of a stay — which was not involved in that case — the bankruptcy judge observed that all action in the product liability suits was stayed, including any action against co-defendants:

"[T]he stay operates as a windfall benefit to co-defendants and insurance companies who, along with the debtor, enjoy many of the benefits of the moratorium. Nevertheless, for many reasons (perhaps including section 362 itself), products liability plaintiffs cannot dismiss a reorganization debtor and proceed against co-defendants only. Actions taken in violation of the stay are without effect." Id. at 295.

We do not find these unsupported remarks controlling. Incidentally, we observe that the instant motion seeks severance, not dismissal. Further, as Judge Peckham stated in In Re Related Asbestos Cases, supra, "[t]his comment . . . was merely gratuitous dictum. The scope of a 362 stay was not at issue in the case; in fact, White Motor actually involved the statutory authority vel non of a bankruptcy court to appoint a special master. The court did not engage in a careful analysis of section 362, but merely stated baldly its conclusions. Moreover, the two cases upon which it relied, Kalb v. Feuerstein, 308 U.S. 433 (1940) and Potts v. Potts, 143 F.2d 883 (6th Cir. 1944), cert. denied, 324 U.S. 868 (1954), did not involve an issue of codefendants." Id. at 10. We similarly reject as unpersuasive defendants' other cited authorities.[3]

We are in accord with several recent decisions considering the scope and effect of the automatic stay provisions of §362(a) in the context of the UNARCO and Johns-Manville bankruptcies. In Kindle v. Fibreboard, no. TY-79-35-CA (E.D., Tex-

---

3. In Federal Life Insurance Company v. First Financial Group of Texas, Inc., 3 B.R. 375 (S.D., Tex. 1980), the court did indeed refuse to permit severance of plaintiff's claim against the debtor bankrupt from other individual co-defendants, one of whom was a corporate officer of the bankrupt. The court noted that the claims against the bankrupt and its officers were inextricably interwoven and best resolved in one proceeding. Id. at 376. The decision, however, appears to be based not on the automatic stay provided in §362(a), but on the court's inherent discretion to permit or deny severance based on consideration of justice, convenience and efficiency. Similarly, in In Re Coleman American Companies, 8 B.R. 384 (D.Kan. 1981), the court was not called upon to determine the scope of a stay but rather was faced with an action requesting relief from a legitimate stay whose proper scope was not at issue. As such, we find these decisions uncontrolling.

as, August 12, 1982),[4] defendants Fibreboard Corporation, Owens-Corning Fiberglas Corporation, Eagle-Picher Industries, Inc. and Raybestos-Manhattan, Inc. filed motions to stay all proceedings in which UNARCO had also been named a party defendant. Judge Justice denied the requested relief and instead ordered that all claims, cross-claims, counterclaims, and third-party claims brought by or against UNARCO be severed and stayed and all remaining claims involving other parties be permitted to proceed to trial. Judge Justice reasoned:

"By proceeding against the remaining defendants here, without Unarco, this court will not be permitting any seizure or judgment against Unarco's property, or interfere with the orderly arrangement of its affairs by the bankruptcy court. Further, the resumption of any collection efforts or harassment of Unarco will not ensue. It is clear, therefore, that the Bankruptcy Act in no way prohibits continuation of the cases at hand against the remaining defendants, once the claims, counterclaims, cross-claims, and third-party claims brought against or in behalf of Unarco have been severed from this civil action and stayed."

In a recent decision of the Bankruptcy Court for the Northern District of Illinois, In Re UNR Industries, Inc. (N.D., Ill., Sept. 15, 1982), the Bankruptcy Court, relying on the opinion by Judge Justice in Kindle, supra, held that the automatic stay provisions of §362 apply only to the debtor and not nonfiling co-defendants. Similarly, in In Re Related Asbestos Cases, supra, Judge Peckham severed and stayed all claims brought by or against defendants

---

4. A writ of mandamus was denied without opinion by the United States Court of Appeals for the Fifth Circuit on August 20, 1982.

UNARCO or Johns-Manville and permitted all remaining claims to proceed unabated. Judge Peckham noted that the balance of hardship weighed in favor of the injured plaintiffs and concluded that they "should not be . . . denied a forum in which to pursue their claims against those defendants who remain unshielded by the bankruptcy laws." Id. at 14. See also McDonald v. Johns-Manville Sales Corp., no. IP 81-557-C (S.D., Ind., August 24, 1982); Harvey v. Johns-Manville Sales Corp., no. 3-81-0009-H (N.D., Tex., August 27, 1982); Wester v. Johns-Manville Sales Corp., no. 508-108 (Wisconsin Cir. Ct., September 2, 1982); McCarty v. Johns-Manville Sales Corp., no. 579-0316(R) (S.D., Miss., September 13, 1982); Fontenot v. Fibreboard Corporation, no. 79-0738 (W.D., La., September 14, 1982); Hendrix v. Raymark Industries, Inc. no. CV479-326 (S.D., Ga., September 15, 1982).

On the basis of the foregoing analysis, we now address the specific request that all claims filed by or against UNARCO or Johns-Manville in the instant matter be severed and stayed and all remaining claims be permitted to proceed. Severance of claims is governed by Pa. R.C.P. 213(b) which provides as follows:

"(b) The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims set-offs, cross-suits, or issues."

In this Commonwealth, trial courts have broad discretion in the consolidation, joinder and severance of causes of action and separate issues at trial. Kuhns v. Brugger, 390 Pa. 331, 135 A.2d 395

(1957); Balla v. Sladek, 381 Pa. 84, 112 A.2d 156 (1955); Hamilton v. Gallo, 233 Pa. Super. 476, 334 A.2d 692 (1975). Defendants contend that severance of the bankrupt petitioners from this action is inappropriate because of the substantial inconvenience and expense that would inure to the remaining defendants and the consequent burden on the judicial system resulting from the necessity to relitigate identical issues in subsequent actions for contribution and indemnification.

We acknowledge that the solvent co-defendants in the instant action may well be inconvenienced by the expeditious resumption of plaintiffs' claims against them. However, we are also cognizant of the serious prejudice that thousands of plaintiffs in suits pending in this court may suffer should we deny the requested severance. On balance, we conclude that the hardship weighs in favor of the injured plaintiffs. We quote at length the comments of Judge Justice in Kindle, supra:

"Large expenditures of time and money have been made by the parties in preparation for [this trial], much of which would have to be reviewed and repeated at a later date, should these cases be postponed; that is, it will be required that discovery and legal briefing be updated and supplemented; evidence will become ever more stale; it will be requisite that witnesses be re-interviewed; and the attorneys will be obliged to refresh their memories as to the facts and record of this complex case. Far more important, however, is the fact that the plaintiffs have alleged serious physical injuries and are, presumably, in need of the compensation they seek in these civil actions. While it may well be that defendants cannot be held liable for any injuries that plaintiffs may attempt to establish at trial, clearly plaintiffs' right to a day in court should not be further postponed."

If defendants' inconvenience and hardship is real, by reason of the trial unavailability of these debtor co-defendants, they are not without access to appropriate relief; they may apply to the Bankruptcy Court for the lifting of the statutory stay as to the bankrupt debtors.

Accordingly, we enter the following

### ORDER

And now, this September 24, 1982, upon consideration of plaintiffs' petitions for severance of UNARCO Industries, Inc. and Johns-Manville Corporation from the instant action and defendants' responses thereto, it is hereby ordered and decreed that said petition is granted. All claims, cross-claims, counterclaims, and third-party claims brought by or against defendants UNARCO and/or Johns-Manville in the above captioned matter are hereby severed and stayed. It is further ordered that all remaining claims, cross-claims, counterclaims and third-party claims involving other parties shall proceed unabated.

Ancillary to this order, we are this day entering a pre-trial order applicable to all asbestos-related cases now pending before this court which will provide for a simplified procedure for severance of UNARCO and Johns-Manville in any case in which such severance is sought, upon the filing of a praecipe.